No. 767　　　　　August 12, 2026　　　　　205

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

TEDDY CARLTON PEAL II,
*Defendant-Appellant.*

Washington County Circuit Court
23CR51390; A184072

Andrew Erwin, Judge.

Submitted December 8, 2025.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and James Brewer, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Lauren P. Robertson, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

EGAN, J.

Affirmed.

Pagán, J., concurring.

**EGAN, J.**

Defendant appeals a judgment of conviction for harassment and fourth-degree assault constituting domestic violence that was entered after a jury found him guilty of those offenses and acquitted him on a charge of strangulation constituting domestic violence. Defendant raises a single assignment of error, arguing that the trial court plainly erred by refusing to read aloud at the close of the evidence certain jury instructions that it had previously read to the jury at the outset of the case.[1] At the conclusion of the evidence, before closing statements, the trial court read aloud instructions that it had not previously read to the jury. The court provided written versions of all of the instructions, including the earlier instructions, and told the jury the instructions were there for them to read. Defendant argues that the court failed to state all matters of law necessary for the jury's verdict, as required by ORCP 58 B and ORCP 59 B. The state argues that the trial court did not plainly err, and that if it did, the error was harmless. We conclude that the trial court plainly erred, but that the error was harmless. We therefore affirm.

An error is "plain" when it is one of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record and does not require us to choose among competing inferences. *State v. Vanornum*, 354 Or 614, 629, 317 P3d 889 (2013). After briefing in this case, we decided *State v. Shine*, 334 Or App 360, 370, 557 P3d 181 (2024), and the Supreme Court affirmed it, *State v. Shine*, 375 Or 112, 588 P3d 231 (2026) (*Shine II*). Those decisions determined that ORCP 58 B and ORCP 59 B require a trial court to "charge" the jury "at the conclusion of the case by reading the instructions necessary for the jury's information in giving its verdict." *Id.* at 129.

In this case, we readily conclude that instructions that the trial court declined to reread at the end of the trial, such as definitions of the applicable culpable mental states

---

[1] Defendant argues, among other things, that preservation was excused because an objection would have been futile. We disagree. But defendant has also requested plain error review if we conclude that the claim of error was not preserved. We begin from that proposition.

and the defendant's right not to testify, included such necessary instructions. Accordingly, the trial court plainly erred by not rereading those instructions aloud to the jury after the close of the evidence. *Id*. *See also State v. Jury*, 185 Or App 132, 139, 57 P3d 970, 974 (2002), *rev den*, 335 Or 504 (2003) (whether error is plain is determined "by reference to the law existing as of the time of the appellate decision").

The state argues that even if the error is plain, it was in any event harmless. An error that is harmless does not provide a basis for reversal. *State v. Ortiz*, 372 Or 658, 671, 554 P3d 796 (2024) ("Under Article VII (Amended), section 3, of the Oregon Constitution, an appellate court may not reverse a criminal defendant's conviction based on an error—whether preserved or unpreserved—that is harmless."). An error is harmless if there is "little likelihood" that it affected the verdict. *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). As noted, the error here is plain, but we conclude that it was harmless under these circumstances.

In determining whether an instructional error prejudiced defendant, we must consider the instructions as a whole. *State v. Thompson*, 328 Or 248, 266, 971 P2d 879 (1999). At the outset of the trial, the court read aloud a set of preliminary jury instructions. Some of the instructions were about the functions of the court and jury, and trial procedures. But the instructions also included the definitions of the culpable mental states for the charged offenses, the presumption of innocence, and an instruction about a defendant not testifying. At the conclusion of the case, which was less than a day from the initial instructions, the court provided the jury with a full set of written instructions, including the ones from the beginning of the case, and pointed out where those initial instructions could be found, instructed the jury on the presumption of innocence, proof beyond a reasonable doubt, several charge-specific definitions, the defense of self-defense, the applicability of self-defense to a person who was the initial aggressor, and then the instructions applicable to each offense.

In *Shine,* the error in not rereading the initial instructions was not harmless. Some of the factors that led

to that conclusion were that in that case, the gap between the initial instructions and the final instructions was eight days; the court did not repeat instructions that are foundational constitutional principles of the right to a fair trial, such as the presumption of innocence, the right not to testify, and proof beyond a reasonable doubt. In *Shine*, the overall impression could have been that those instructions were not important enough to be repeated as the jury moved to the deliberation stage, and there was also a risk that jurors might not remember to apply those foundational principles. *Shine II*, 375 Or at 131 (noting that, in light of research on "recency bias," which indicates that people remember best, and are most influenced by, the most recent event in a sequence, "[w]e will not readily assume that an instruction read orally to the jury at the beginning of a trial will necessarily have the same effect as when the instruction is read immediately before deliberation"); *State v. Escalante*, 350 Or App 233, 238-39, ___ P3d ___ (2026) (same). Here, however, the gap between the preliminary instructions and the instructions at the conclusion of the case was less than a day. The court also gave instructions at the conclusion of the case on the presumption of innocence and proof beyond a reasonable doubt, so those fundamental principles were reiterated to the jury just before deliberation. Because the gap between sets of instructions was so brief, it is unlikely that the jury would infer that the preliminary instructions were unimportant, or that they would forget fundamental constitutional principles so thoroughly that they would not remember to apply them at all. Jurors had the complete set of instructions in writing if they needed to refresh their memories about any of the preliminary instructions. Under those circumstances, in contrast to *Shine,* there is little likelihood here that the error affected the verdict.

For those reasons, we affirm the judgment of the trial court.

Affirmed.

**PAGÁN, J.,** concurring.

Our jurisprudence dictates that even if we identify a critical error, such as failing to read instructions, we

must look to the rest of the trial to see whether the error was harmless. That is because Oregon's constitution—as interpreted through caselaw—does not allow the appellate courts to reverse a judgment if there is "little likelihood that the error affected the verdict." Or Const, Art VII, § 3; *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003). Our approach makes sense to the extent it hews closely to the requirement that we examine the circumstances of the trial before deciding whether any error, fundamental to the trial or not, deprived a party of a fair trial. But that approach is limited by what we can ascertain from a position of detachment from the trial.

That is not the only way to address such errors, though Oregon has yet to adopt an alternative. *See State v. Ramos*, 367 Or 292, 300, 478 P3d 515 (2020) (discussing the concept of structural error); *Ryan v. Palmateer*, 338 Or 278, 295 108 P3d 1127 (2005) (noting that Oregon has not adopted structural error and declining to find structural error). Comparatively, under the federal constitution, the "structural error" doctrine identifies, among other errors, errors for which the effect simply cannot be ascertained. *Weaver v. Massachusetts*, 582 US 286, 293, 137 S Ct 1899, 198 L Ed 2d 420 (2017) ("[S]ome errors should not be deemed harmless beyond a reasonable doubt. * * * These errors came to be known as structural errors."). In *Weaver*, the trial court closed access to a courtroom during jury selection; a state court found that such closure violated the defendant's rights, but declined to reverse because the error did not appear to have affected the verdict; yet the United States Supreme Court reversed, concluding that the error was structural.

In such cases, while the Court has allowed that there are circumstances under which fundamental trial rights may be violated without reversal, the focus is mainly on *why the court deprived the defendant of the right in the first place,* and less so the unascertainable effect it may have had considering the other evidence. *Id.* at 297. Structural error vindicates aspects of the justice system that exist not solely for defendant's benefit, but also for the benefit of society as a whole. *See id.* at 295. The opening of a courtroom assists a defendant only indirectly; the benefit of an open

courtroom is felt by society at large by encouraging a transparent justice system, which in turn benefits defendants. In that vein, the reading of jury instructions is of benefit to more than just a defendant,[1] it is a part of the system of criminal justice that our society expects and which forms part of the bedrock ritual of transparency that gives legitimacy to the decisions of our courts.

This case provides a good example of why the approach in *Weaver* is more appropriate and why Oregon should adopt the federal standard regarding structural errors, such as the one identified in this case, for which we simply cannot reasonably ascertain its effect on the verdict. Considering that this is the second such case in Oregon where a trial judge has *chosen* not to read the instructions to the jury, and that both times the appellate courts focused more on the effect of such a choice, rather than why the court would deprive the defendant of such rights in the first place, our jurisprudence is not providing the appropriate deterrent to the trial courts. *See State v. Shine*, 334 Or App 360, 557 P3d 181 (2024), *aff'd*, 375 Or 112, 588 P3d 231 (2026) (reversing where trial court failed to read instructions aloud, though only after harmless error analysis). That is, if the trial court does not believe that it needs to justify its violation of rights, based on what it is otherwise witnessing in the trial, the public might rightfully complain that our courts are detaching from their identified purpose, which is to provide a consistent and fair experience for *every* litigant that appears in our courts.

I respectfully concur.

---

[1] After all, why do we read jury instructions in the first place? If we could always just hand the printed instructions to a jury, there should rarely be a need to read the instructions. Yet, the reading of jury instructions is undoubtedly a benefit by the fact that it allows clear public access to those instructions, in a way that the written word is not so easily accessible to all members of our society. Indeed, that has long been the understanding of the Council on Court Procedures and the Legislature. *See State v. Shine*, 375 Or 112, 123, 588 P3d 231 (2026) (discussing the history of ORCP 58 and 59).